UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 22-cr-336 (DWF/DJF)

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S MEMORANDUM |
| v. | ) | IN AID OF BOND AND DETENTION |
| | ) | DETERMINATIONS |
| CLINTON JAMES WARD, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW the United States of America, by and through its undersigned attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Thomas M. Hollenhorst, Assistant United States Attorney, and hereby provides this memorandum to aid the Court in determining which defendants in this case should be released on bond or detained. These recommendations are preliminary and may be modified depending on the findings and recommendations of the Pretrial Service Office. At this time, and for the reasons that follow, the government recommends that the following defendants be detained pending trial and that all other defendants be released on the terms and conditions of bond recommended by the Pretrial Service Office: Clinton James Ward, Perry John Coyle, James Joseph Graczyk, Kevin Philip De Rios Havenar, Armando Robert Montero, Breezie Lynn Pena, Aaron Michael Teadt, and Jimmy Thithavong.

I. Introduction

On January 4, 2019, Clinton James Ward was arrested in the parking lot of a motel in Vadnais Heights, Minnesota, and found in possession of more than eight pounds of

methamphetamine. At the time, he had set up shop selling methamphetamine from his hotel room to various customers. *See* Doc. 1; Doc. 39, Count 3. Within weeks of his arrest, Ward fled to Jalisco, Mexico (near Guadalajara). There, he eventually met up with various Mexican and American drug traffickers who all had ties to the violent and notorious Sinaloa Cartel based in Culiacán, Mexico, and the equally violent and notorious Jalisco New Generation Cartel ("CJNG") based in Jalisco, Mexico. Over the next five years, until his arrest in March 2024, Ward established and operated his own Mexican-sourced drug franchise that distributed thousands of pounds of methamphetamine, fentanyl and cocaine to numerous Minnesota-based drug traffickers. So vast was this drug trafficking organization ("DTO") that law enforcement, over the course of a long-term, multi-jurisdictional investigation, has seized over 1,600 pounds of methamphetamine, four kilograms of cocaine, two kilograms of fentanyl, 30,000 counterfeit fentanyl pills, 45 firearms, and more than $2.5 million in drug proceeds. *See, e.g.,* Figures 1, 2 and 3. Law enforcement also believes that tons of additional methamphetamine and other controlled substances have been transported into the State of Minnesota, which has generated tens of millions of additional dollars in drug proceeds. During the course of the investigation, dubbed Operation Ice Bear, 50 defendants have been charged with methamphetamine trafficking and other drug trafficking offenses.

 

Figure 1                                           Figure 2



Figure 3

Even as recently as July 16, 2024, one member of the DTO, Jonathan Henry Valencour, was arrested in the Twin Cities and found in possession of over 180 pounds of methamphetamine and a loaded firearm equipped with a silencer.  *See United States v. Jonathan Henry Valencour*, Case No. 24-mj-538 (DTS); *see* Figures 4 and 5.

 

Figure 4                                                                 Figure 5

II. Procedural History

Ward was originally indicted on November 30, 2022, well after he had fled to Mexico. *See* Doc. 1. The indictment charged him with a single count of possession with the intent to distribute 500 grams of more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and stemmed from his arrest in January 2019. *See id.* After years of investigation, United States and Mexican authorities were able to locate Ward, corner him at his gated residence in Jalisco, Mexico, and take him into custody. He was formally arrested by deputy United States marshals in San Diego, California, after being flown there by the Mexican authorities.

On July 25, 2024, Ward and 14 of his co-conspirators were charged in a superseding indictment with numerous drug-related offenses stemming from Ward's drug trafficking activities. *See* Doc. 37. Prior indictments had charged many others linked to Ward's DTO; but, these recent charges have now provided a death blow to most of the remaining vestiges of the Ward DTO. Besides the conspiracy offense charged in Count 1 of the superseding indictment, Ward is also charged with over a dozen substantive drug offenses including the most serious drug charge of them all – Engaging in a Continuing Criminal

Enterprise – which carries a mandatory minimum sentence of 20 years. Under the United States Sentencing Guidelines, Ward faces a likely guideline sentence of life imprisonment if convicted of these offenses.

### III. Statement of Facts

The facts underlying the superseding indictment can be summarized as follows:

-Ward headed the affairs of the DTO and used his connections in Minnesota coupled with his connections to drug suppliers and drug distributors tied to the Sinaloa and CJNG Cartels to organize myriad drug transactions in Minnesota. In a sense, he ran a Mexican store-front operation, in which customers would order up drugs. Ward, and others working with him, would then arrange to distribute the drugs to customers using a network of drug distributors in Minnesota. Ward used an encrypted App known as "Signal" to communicate with drug customers and suppliers.

-Ward took advantage of an existing pipeline of drug importations by cartel members. For example, Ward would arrange to take portions of much larger importations – sometimes involving thousands of pounds of drugs – to distribute to his customers. These drug loads would enter the United States through various means including large shipments concealed in semi-trailers crossing the border at various southwest border locations. These shipments would then be broken down into more manageable quantities for transportation to Minnesota and other locations throughout the United States. Sometimes drug loads would be transported in private vehicles, but more typically, the drugs would come to Minnesota in semi-trailers.

-Once the drugs were sold to customers in Minnesota, Ward would reap the profits of these sales. Methamphetamine typically sold for about $3,000 per pound. When one considers just the value of the methamphetamine seized by law enforcement, this constitutes over $4.8 million worth of methamphetamine linked to Ward's DTO. In all, law enforcement believes that tens of millions of dollars in drugs were trafficked by the DTO. Drug proceeds would typically be delivered to the same truckers who delivered the drugs. The money would then make its way back to Ward in the same manner the drugs had arrived.

-Each of the other 14 defendants named in the superseding indictment played a role in Ward's DTO. Through the use of a confidential source ("CS") and a police undercover officer ("UC"), investigators were able to purchase drugs from most of these defendants and seize drugs and drug proceeds from their residences and vehicles. The misconduct of these co-conspirators is summarized as follows:

-Shawnette Lynn Andreasen (age 46):  On December 7, 2023, in Anoka, Minnesota, Andreasen sold 887.8 grams of methamphetamine (97% pure) to the UC at Ward's direction.  On January 24, 2024, in Anoka, Andreasen sold another 447.3 grams of methamphetamine (96% pure) to the UC at Ward's direction.  On February 6, 2024, officers searched Andreasen's residence in Anoka and seized, among other things, 3,551.8 grams of methamphetamine (100% pure), 572.6 grams of cocaine, and $1,800 in cash.

-Jonathon Beau Bailey (age 33):  On October 19, 2023, Ward instructed the CS to make a money drop of $10,000 to "Beau" in Vadnais Heights as payment for a shipment of methamphetamine soon to be arriving.   The CS met with Bailey and delivered the cash to him.  On March 27, 2024, officers searched Bailey's residence and vehicle in Coon Rapids and seized approximately two ounces of cocaine.  In a post-*Miranda* statement, Bailey admitted that he would communicate with Ward using the Signal App and that he was currently $16,000 in debt to him.

-Vin Chanry (age 37):  On April 17, 2023, in Saint Paul, Chanry distributed 13,479 grams of methamphetamine (100% pure) to the CS at Ward's direction.  On April 19, 2023, at her residence in Burnsville, she distributed another 4,494 grams of methamphetamine (96% pure) to the CS.  On April 24, 2023, law enforcement searched Chanry's vehicle and residence and seized, among other things, approximately 1,747 grams of methamphetamine from her vehicle and 5,340.2 grams of methamphetamine from a cooler in the garage.

-Perry John Coyle (age 65):  On July 27, 2023, in Cottage Grove, Coyle distributed 3,528 grams of methamphetamine (99% pure) to the CS at Ward's direction.  Coyle was arrested in October 2023 and found in possession of over eight pounds of methamphetamine, which he was transporting to Minnesota from California.

-James Joseph Graczyk (age 51):  On May 18, 2023, in Minneapolis, Graczyk distributed 3,120 grams of methamphetamine (100% pure) to the CS at Ward's direction.  On September 7, 2023, officers searched Graczyk's residence in Minneapolis and seized, among other things, 3,061 grams of methamphetamine (99% pure) and approximately one kilogram of cocaine.

-Kevin Philip De Rios Havenar (age 25):  On November 30, 2023, in Minneapolis, Havenar distributed 903.9 grams of methamphetamine (98% pure) to the UC at Ward's direction.  On January 11, 2024, in Minneapolis, he distributed another 886.3 grams of methamphetamine (100% pure) to the UC.  On January 16, 2024, officers searched Havenar's residence in Minneapolis and seized approximately $85,000 in cash.

-Benjamin DeWayne Johnson (age 40):  On May 8, 2023, in White Bear Lake, Johnson distributed 876.5 grams of methamphetamine (100% pure) to the CS at Ward's direction.   Immediately following this transaction, officers saw Johnson meet with

6

Pappenfus at a business in Minneapolis. There, Johnson distributed 439.9 grams of methamphetamine (95% pure) to Pappenfus. On May 24, 2023, officers searched Johnson's hotel room in Eagan and seized, among other things, approximately one kilogram of cocaine and $36,500 in cash.

-Armando Robert Montero (age 30): On June 29, 2023, in Richmond, Montero distributed 1,356.8 grams of methamphetamine (99% pure) to the CS at Ward's direction. On August 30, 2023, officers executed search warrants for Montero's vehicle and residence and seized 2,706.1 grams of methamphetamine (95% pure) from his vehicle and 2,952.8 grams of methamphetamine (97% pure) from his residence.

-Joseph Allen Pappenfus (age 41): On May 8, 2023, in Minneapolis, Pappenfus took possession of 439.9 grams of methamphetamine (95% pure) from Johnson for further distribution.

-Breezie Lynn Pena (age 46): On October 12, 2023, in Bloomington, Pena distributed 884.9 grams of methamphetamine (95% pure) to the UC at Ward's direction. Officers later searched Pena's hotel room and seized another 10 pounds of methamphetamine and $64,210 in cash.

-Aaron Michael Teadt (age 47): On May 25, 2023, in White Bear Lake, Teadt distributed 903.0 grams of methamphetamine (100% pure) to the CS at Ward's direction. On May 31, 2023, in Burnsville, Teadt distributed another 4,537 grams of methamphetamine (99% pure) to the CS.

-Jimmy Thithavong (age 38): On April 25, 2023, in Burnsville, Thithavong distributed 4,826 grams of methamphetamine (96% pure) to the CS at Ward's direction.

-Peter Charles Watkins (age 45): On July 5, 2023, in Minneapolis, Watkins picked up $5,100 in cash from the CS at Ward's direction concerning the drug transaction with Montero on June 29, 2023. On July 17, 2023, at a rest stop in Faribault, officers saw Watkins meet with a trucker. He entered a tractor-trailer with a bag and left without it. The trucker was stopped and officers seized $48,360 in cash from the bag.

-Nicole Marie Williams (age 41): On June 12, 2023, in White Bear Lake, Williams distributed 1,344.5 grams of methamphetamine (100% pure) to the CS at Ward's direction. Drug packaging materials and other drug-related items were seized from her residence during a search on June 21, 2023.

Many of these defendants have prior criminal records – some significant. For example, Ward's convictions include driving while impaired (2003 & 2007), fifth-degree

assault (2007), fourth-degree possession with the intent to distribute controlled substances (2011), theft (2013 & 2014), possession of methamphetamine (2013), possession of marijuana (2014), and receiving stolen property (2017). Coyle has a prior felony conviction in Ramsey County for theft (2007). Graczyk has a prior felony conviction in California for drug possession (1992). Montero has a prior felony conviction in Arizona for assault (2020). Pena has a prior felony drug conviction in Hennepin County for first-degree sale of methamphetamine. Teadt has several prior felony convictions in Minnesota for possession of explosives (1995), theft of a motor vehicle (2003), theft (2006), fleeing from a police officer (2006), and being a felon in possession of a firearm (2023). Thithavong has a prior felony state conviction in Dakota County for second-degree possession of a controlled substance (2009), and a prior federal felony conviction in South Dakota for conspiracy to distribute a controlled substance (2013). Watkins has prior felony convictions in Minnesota for fleeing from a police officer (2000), and third-degree possession of a controlled substance (2003). Finally, Williams has three prior felony convictions in Minnesota for forgery (2009 & 2015) and theft (2023). Ward is facing a 20-year mandatory minimum sentence. All other defendants are facing a 10-year mandatory minimum sentence.

IV. <u>Bond and Detention Recommendations</u>

A. <u>Legal Framework</u>

After the arrest of a person who is charged with a controlled substance offense that carries a maximum term of imprisonment of ten years or more, a judicial officer must conduct a detention hearing to determine whether any condition or combination of

8

conditions of bond will reasonably assure the appearance of the person and the safety of any other person and the community. *See* 18 U.S.C. § 3142(f)(1)(C). The factors the judicial officer must consider are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

A rebuttable presumption of detention applies in this case. *See* 18 U.S.C. § 3142(e)(3)(A). "[A] defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). "Once a defendant has met his burden of production relating to these two factors, the

9

presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.*

Pretrial detention may be ordered either upon (1) a showing by clear and convincing evidence that release will result in a danger to the community; or (2) a showing by a preponderance of the evidence that release will result in a serious risk of flight. *See Abad*, 350 F.3d at 797; *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986).

B. Bond Recommendations

In this context, and after considering the factors outlined in § 3142(g), the government tentatively recommends that the following defendants be released on conditions of bond: Shawnette Lynn Andreasen (already released on bond), Jonathon Beau Bailey, Vin Chanry, Benjamin DeWayne Johnson, Joseph Allen Pappenfus, Peter Charles Watkins, and Nicole Marie Williams.

C. Detention Recommendations

After considering these same factors, the presumption of detention, the defendants' past criminal misconduct and, in some cases, the defendants' lack of substantial ties to the community, the government initially recommends that the following defendants be detained pending trial: Clinton James Ward (already detained), Perry John Coyle, James Joseph Graczyk, Kevin Philip De Rios Havenar, Armando Robert Montero, Breezie Lynn Pena, Aaron Michael Teadt, and Jimmy Thithavong. The government believes that there are no conditions or combination of conditions of bond that would reasonably assure their appearance at future hearings or the safety of the community.

1. The Nature and Circumstance of the Offense

Congress has deemed the charges against the defendants so serious as to mandate a sentence of not less than 10 years in prison and a maximum sentence of life imprisonment upon conviction. *See* 21 U.S.C § 841(b)(1)(A). Moreover, if convicted, the defendants will likely be facing lengthy guideline sentencing ranges.

### 2. The Weight of the Evidence

Although defendants are afforded with the presumption of innocence during a detention hearing, *see* 18 U.S.C. § 3142(j), the evidence against the defendants is overwhelming. Each of the defendants was observed by law enforcement engaging in significant drug transactions. This gives them an extra incentive to flee the jurisdiction of the Court. *See United States v. Bruno*, 89 F.Supp.3d 425, 431 (E.D.N.Y. 2015) ("When evidence of a defendant's guilt is strong, and when the sentence of imprisonment upon conviction is likely to be long . . . a defendant has stronger motives to flee.") (citation omitted).

### 3. The History and Characteristics of the Defendants

At the detention hearings, and after reviewing the Pretrial Service Reports, the government will provide an argument tailored to each defendant as to why their individual history and characteristics call for detention. As it pertains to all of these defendants, the government is concerned about the risk of flight. Although it appears that all the defendants are United States citizens, it has become all too common for large-scale drug traffickers to seek safe haven with their drug associates in Mexico. In fact, Ward did just that when facing state drug charges in January 2019. Another related defendant with ties to this DTO also fled to Mexico before her federal recent arrest. *See United States v.*

*Cristina Ann Brooks*, Case No. 23-cr-368(1) (MJD/ECW) (defendant fled to Mexico after being charged in both state and federal court with similar drug offenses).

    4.   <u>The Nature and Seriousness of the Danger to any Person or the Community</u>

The defendants' serious misconduct demonstrates the danger they pose to other persons and the community if they are released. While criminal charges tend to curb a defendant's continued misconduct, there is no reason to believe that the defendants would not engage in other illegal activities if released on bond. Now, facing significant federal sentences, there is no telling what their motivations might be if released on bond. One thing is certain, however – their release would put countless people at risk and provide them with an excellent opportunity to abscond to avoid a significant sentence. For these reasons, there are no conditions or combination of conditions that would reasonably assure the defendants' appearances and the safety of any other person and the community if they are released on bond.

WHEREFORE, the government respectfully asks this Honorable Court to consider and adopt the recommendations for bond and detention as to these defendants as outlined above.

Dated: August 6, 2024            Respectfully submitted,

                                              Andrew M. Luger
                                              United States Attorney

                                              s/*Thomas M. Hollenhorst*
                                              BY: THOMAS M. HOLLENHORST
                                              Assistant United States Attorney
                                              Attorney ID No. 46322